UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DEBORAH J. SAUNDERS,

    Plaintiff,

v.                                   Case No: 2:15-cv-109-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Deborah Saunders' Complaint (Doc. 1) filed on February 18, 2015. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I. Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A. Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any

other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B. Procedural History

On August 8, 2011, Plaintiff filed an application for disability insurance benefits and for supplemental security income asserting an onset date of February 16, 2010. (Tr. at 106, 107, 191, 195).[1] Plaintiff's applications were denied initially on November 10, 2011, and on reconsideration on January 26, 2012. (Tr. at 106, 107, 125, 131). A hearing was held before Administrative Law Judge ("ALJ") Joseph L. Brinkley on August 15, 2013. (Tr. at 30-59). The ALJ issued an unfavorable decision on September 13, 2013. (Tr. at 8-23). The ALJ found Plaintiff not to be under a disability from February 16, 2010 through the date of the decision. (Tr. at 23).

On December 17, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on February 18, 2015. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings (*see* Doc. 14), and the parties did not object to the case being reassigned to the Undersigned. (*See* Docs. 19-20).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Social Security*, 542 F. App'x 890, 891

---

[1] Plaintiff's application for supplemental security income shows an onset date of November 5, 2006. (Tr. at 95). The ALJ stated that onset date was February 16, 2010 (Tr. at 11), and the issue is not contested here.

(11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2] An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Packer*, 542 F. App'x at 891 (citing 20 C.F.R. § 404.1520; *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004)). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through June 30, 2014. (Tr. at 13).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 16, 2010, the alleged onset date.  (Tr. at 13).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease; status-post laminectomy; history of bilateral knee arthroscopies bilateral knee degenerative joint disease; obesity; major depressive disorder; attention deficit disorder; bipolar disorder; and panic disorder with agoraphobia.  (Tr. at 13).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  (Tr. at 13-15).  At step four, the ALJ determined that

---

[2] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

Plaintiff has the residual functional capacity ("RFC") to perform sedentary work except that Plaintiff:

> will need a sit/stand at-will option that will allow her to remain at the workstation when not on regularly scheduled breaks; can occasionally climb ramps/stairs, balance, kneel, and stoop; can never crawl, crouch, or climb ladders, ropes, or scaffolds; should avoid concentrated exposure to wetness, vibrations, extreme hot or cold temperatures, and workplace hazards including unprotected heights, dangerous machinery, and uneven terrain; is limited to unskilled, simple, routine, repetitive tasks; superficial contact with general public (can work in same vicinity as the general public and may occasionally have indirect communication as in greeting when passing but no ongoing, direct interaction); can occasionally work in team or tandem (one-third of an eight-hour workday); and is limited to work that does not require high-volume production quotas and/or fast-paced assembly line jobs.

(Tr. at 15). The ALJ determined that Plaintiff is unable to perform her past relevant work as a legal secretary, D.O.T. 201.362-010, sedentary exertional level, svp 6. (Tr. at 22).[3] The ALJ considered Plaintiff's age, education, work experience, and RFC to determine that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 22). The ALJ found that Plaintiff could perform the following job: An elemental hand worker, D.O.T. 715.684-026, sedentary exertional level, svp 2. (Tr. at 22). This job includes: electronic worker, D.O.T. 726.687-010, light exertional level, svp 2 and bench assembler, D.O.T. 706.684-022, light exertional level, svp 2. (Tr. at 22).

The ALJ determined that the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles, and acknowledged that the vocational expert was experienced in considering a sit/stand option. (Tr. at 22). The ALJ concluded that Plaintiff was not under a disability from February 16, 2010, through the date of the decision. (Tr. at 22).

---

[3] "DOT" refers to the *Dictionary of Occupational Titles*, and "SVP" refers to the Specific Vocational Preparation Code.

**D. Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Richardson*, 402 U.S. at 401; *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as the finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

**II. Analysis**

Plaintiff raises two issues on appeal:

1. The ALJ erred as a matter of law by failing altogether to discuss Ms. Saunders's medically determinable impairment of migraine headaches. As a result, the ALJ's decision contains no discussion of the work-related limitations caused by an impairment that is well documented in the record.

  2. The ALJ erred when he failed to analyze the opinions of Ms. Saunders's treating physician, and the Agency examining specialist in accordance with 20 C.F.R. § 404.1527 and prevailing Eleventh Circuit precedent, especially where, as here, those assessments are not contradicted by any examining source.

(Doc. 18 at 4). The Court addresses each issue in turn.

### A. Plaintiff's Migraine Headaches

The first issue raised by Plaintiff concerns her alleged migraine headaches.

*1. Arguments*

Plaintiff asserts that the ALJ erred as a matter of law "by failing altogether to discuss Ms. Saunders' medically determinable impairment of migraine headaches." (Doc. 18 at 5). Thus, Plaintiff argues that the ALJ failed to follow the regulatory prescription at step two in not finding that Plaintiff's migraines are a severe impairment. (Doc. 22 at 2). As a result of this failure, Plaintiff argues that the ALJ did not evaluate the migraine headaches at steps three, four, or five. (*Id.*). Plaintiff argues that this constitutes error because the evidence demonstrates that her headaches result in work-related limitations. (Doc. 18 at 7-10). By failing to properly account for Plaintiff's migraine headaches, Plaintiff argues that the "RFC/concomitant hypothetical question to the vocational expert . . . did not accurately set forth all of the claimant's impairments and limitations." (Doc. 18 at 6-7).

Defendant, however, argues that substantial evidence demonstrates that the ALJ properly considered all of Plaintiff's impairments. (Doc. 21 at 4). Specifically, Defendant states that "the ALJ specifically considered and discussed Plaintiff's migraines, as well as her associated symptoms and limitations." (Doc. 21 at 5 (citing Tr. 15-18, 45)). Thus, Defendant maintains that the ALJ "considered all of Plaintiff's impairments, severe and non-severe, by expressly finding Plaintiff did not have an 'impairment or combination of impairments' that met or equaled the severity of a listed impairment." (Doc. 21 (citing Tr. 13-15)).

6

Moreover, Defendant argues that substantial evidence supports the ALJ's finding as to Plaintiff's severe impairments. (Doc. 21 at 4). Defendant asserts that Plaintiff's treatment records "do not support the disabling severity Plaintiff alleged or any work-related limitation." (*Id.* at 8). Defendant argues that, instead, these records demonstrate Plaintiff's headaches were "well controlled with medication." (*Id.*). Thus, Defendant argues that the evidence shows that the ALJ considered "Plaintiff's migraine headaches, and substantial evidence supports his conclusion that the condition did not warrant further limitations than those included in his mental RFC assessment." (*Id.*).

    2. *Legal Standard*

At step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments

7

qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

   *3. Analysis*

In this case, the ALJ made a determination that Plaintiff suffered from a number of severe impairments including: lumbar degenerative disc disease; status-post laminectomy; history of bilateral knee arthroscopies bilateral knee degenerative joint disease; obesity; major depressive disorder; attention deficit disorder; bipolar disorder; and panic disorder with agoraphobia. (Tr. at 13). The ALJ did not include Plaintiff's alleged migraine headaches among his findings of Plaintiff's severe impairments. (*See* Tr. at 13). Nevertheless, because the ALJ made a determination that Plaintiff suffered from at least one severe impairment, the ALJ was not required to list every impairment that may be classified as severe. *See Heatly*, 382 F. App'x at 825. The only requirement is that the ALJ considered Plaintiff's impairments in combination, whether severe or non-severe. *See id.*

Here, the record demonstrates that the ALJ evaluated all of Plaintiff's conditions in combination, whether severe or non-severe. For instance, the ALJ stated in his opinion that "[t]he claimant alleges disability due to depression, *migraines*, back pain, and bilateral knee pain." (Tr. at 16) (emphasis added). The ALJ further noted that Plaintiff testified at the hearing that she has "migraines two to three days a month." (*Id.*). Additionally, at step three, the ALJ stated that the "claimant's impairments, *neither singly nor in combination*, medically meets or equals the severity requirements of any listed impairment." (Tr. at 14) (emphasis added). At step four, the ALJ stated that in making this finding for Plaintiff's RFC:

> I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other

8

   evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-
   4p and 96-7p. I have also considered opinion evidence in accordance with the
   requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and
   06-3p.

(Tr. at 15).

 Based on these statements, the Court concludes that the ALJ considered all of Plaintiff's symptoms, whether severe or not, when he considered the evidence of record. (*Id*.). Thus, the record demonstrates that even if the ALJ erred in failing to determine that Plaintiff's alleged migraines were not severe at step two, the ALJ considered these impairments in combination with Plaintiff's other impairments. (*See* Tr. at 15). Therefore, the ALJ applied the correct legal standard and did not err in failing to find Plaintiff's migraine headaches are a severe impairment, or if he did err, the error was harmless.

   **B. Dr. Tritel's and Dr. Kasprzak's Medical Evaluations of Plaintiff**

 The second issue raised by Plaintiff concerns the ALJ's assessment of Dr. Tritel's and Dr. Kasprzak's medical evaluations of Plaintiff regarding her mental limitations. (Doc. 18 at 16).

   *1. Arguments*

 Plaintiff argues that the ALJ erred "when he failed to analyze the opinions of Ms. Saunders's treating physician, and the Agency examining specialist in accordance with 20 C.F.R. § 404.1527 and prevailing Eleventh Circuit precedent, especially where, as here, those assessments are not contradicted by any examining source." (Doc. 18 at 10). Specifically, Plaintiff maintains that the ALJ "failed to provide 'good/specific/supported reasons' for rejecting the opinions of Ms. Saunders's treating physician and the Agency examining experts with respect to her mental limitations." (*Id.* at 16-20). Plaintiff further asserts that "the opinions of Dr. Tritel and Kasprzak are consistent with the underlying medical evidence." (*Id.* at 13-16).

9

Defendant disagrees and argues that substantial evidence supports the ALJ's decision to assign little weight to Dr. Tritel's and Dr. Kasprzak's medical opinions with respect to Plaintiff's mental limitations.  (Doc. 21 at 9-14).

       *2.  Legal Standard*

Medical opinions are statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions.  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  For treating physicians, the Eleventh Circuit has held that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  "Good cause" exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Id.* at 1241.  When an ALJ elects to disregard the opinion of a treating physician, he or she must clearly articulate the reasons.  *Id.*

For non-treating physicians and one-time examiners, however, their medical opinions are not entitled to any special deference.  *See McSwain v. Bowen*, 814 F.3d 617, 619 (11th Cir. 1987).  Nevertheless, an ALJ is required to consider every medical opinion.  *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).  To evaluate any medical source, an ALJ must use the same criteria, whether the medical source is treating or non-treating, considering the following elements:  "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and

extent of any treatment relationship; (3) supportability; (4) consistency with other medical evidence in the record; and (5) specialization." *Id*. (citations omitted).

An "ALJ may reject any medical opinion if the evidence supports a contrary finding." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)). However, the ALJ must "state with particularity the weight he gave the different medical opinions and the reasons therefor." *Id.* (quoting *Sharfarz*, 825 F.2d at 279). In situations where an ALJ "articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error." *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

### 3. Analysis Concerning Dr. Tritel

Dr. Tritel is Plaintiff's treating physician. (*See* Tr. at 458). In addition to regular treatment records (*See e.g.*, Tr. at 406-457), Dr. Tritel also wrote a Treating Source Mental Status Report regarding the claimant's mental conditions in October 2011. (Tr. at 458-60). Upon review of the ALJ's decision, the Court notes that the ALJ provided three primary reasons for affording little weight to Dr. Tritel's medical opinion regarding Plaintiff's mental limitations. First, the ALJ found that Dr. Tritel failed to use examples of behavioral objective data and failed to indicate what Plaintiff is still able to do despite her mental impairments. (Tr. at 19). Second, the ALJ found Dr. Tritel's opinion to be inconsistent with Dr. Sareen's objective findings, rendered a month after Dr. Tritel's opinion. (Tr. at 19). Finally, the ALJ found Dr. Tritel's medical opinion inconsistent with his own treatment notes. (Tr. at 19).

As stated above, the scope of the Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts*, 841 F.2d at 1080, and whether the findings

are supported by substantial evidence, *Richardson*, 402 U.S. at 390. When supported by substantial evidence, the district court will affirm. *See Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at 1358. An ALJ must clearly articulate the reasons for disregarding the opinion of a treating physician. *Phillips*, 357 F.3d at 1241. While the opinion of a treating physician must usually be given substantial or considerable weight, "good cause" can be shown for not giving such deference when a treating physician's opinion was not bolstered by the evidence, when the evidence supported a contrary finding, or when the opinion is conclusory or inconsistent with the doctor's own medical records. *See id.* at 1241.

Upon consideration, the Court finds that the ALJ applied the correct legal standard and, thus, properly discounted the opinion of Plaintiff's treating physician, Dr. Tritel. The Court also finds that the reasons given by the ALJ for disregarding Dr. Tritel's medical opinions are clearly articulated based on substantial evidence. The Court will specifically address each reason given by the ALJ in turn.

First, the Court discusses the ALJ's finding that Dr. Tritel failed to use examples of behavioral objective data and failed to indicate what Plaintiff is still able to do despite her mental impairment. Dr. Tritel opined that Plaintiff was incapable of sustaining work activity for eight hours a day, five days a week. (Tr. at 460). In giving his opinion, however, Dr. Tritel did not specifically state the reasons why Plaintiff was incapable of sustaining work activity for eight hours a day, five days a week. (*See* Tr. at 460). Moreover, the record does not show that Dr. Tritel's conclusions are supported by any behavioral objective data. (*See* Tr. at 460).

Furthermore, as the ALJ correctly stated (Tr. at 19), Dr. Tritel is not a specialist in mental health. (*See* Tr. at 601). Despite this limitation, however, the ALJ also correctly noted that "it does not appear that Dr. Tritel referred [Plaintiff] for formal psychotropic treatment and only

12

altered [Plaintiff's] medications." (Tr. at 19).[4] The record is devoid of any formal referral by Dr. Tritel of Plaintiff to a medical health specialist. Additionally, as stated by the ALJ, Dr. Tritel "continued to prescribe additional medications over time for the alleged conditions but appears to have failed to mentally examine [Plaintiff] during treatment." (Tr. at 19). In fact, the Court could not find evidence that Plaintiff was objectively mentally examined by Dr. Tritel or that "clear objective documentation of [Plaintiff's] alleged mental health conditions" was performed by Dr. Tritel. (Tr. at 19). Thus, the Court finds that Dr. Tritel's opinion was not bolstered by the evidence, and the ALJ could properly discount Dr. Tritel's opinion on the grounds that Dr. Tritel failed to use examples of behavioral objective data and failed to indicate what Plaintiff is still able to do despite her mental impairment. *See Phillips*, 357 F.3d at 1241.

Second, the ALJ also discounted Dr. Tritel's opinion because he found it to be inconsistent with Dr. Sareen's objective findings, rendered a month after Dr. Tritel's opinion. (Tr. at 19). As stated above, in his October 17, 2011 functional assessment of Plaintiff, Dr. Tritel opined that Plaintiff was incapable of sustaining work activity for eight hours a day, five days a week. (Tr. at 460). Additionally, Dr. Tritel opined that Plaintiff's mood and affect were "depressed." (Tr. at 458). Dr. Tritel opined that Plaintiff's thought process was clear, but that Plaintiff had depressed thought content. (Tr. at 459). Plaintiff was also reported to have poor concentration, mild defects with recent and remote memory, and a moderate defect of immediate memory. (Tr. at 459). No hallucinations or perceptual disturbances were reported. (Tr. at 459).

---

[4] Plaintiff argues that this statement is factually incorrect and cites the Transcript at page 442. The document cited is a treatment note indicating that Dr. Tritel "recommend[s] patient get counseling for" her agoraphobia. (Tr. at 442). The treatment note does not, however, indicate that Dr. Tritel *referred* Plaintiff to formalized psychotherapeutic treatment. (*See* Tr. at 442). The treatment note only indicates that Dr. Tritel *recommended* that Plaintiff receive formal treatment. (*See* Tr. at 442).

Dr. Tritel noted the following behavioral observations: lethargy, fatigue, depression, and pain. (Tr. at 459). Despite these observations, Dr. Tritel opined that Plaintiff could still independently manage her funds if she was awarded benefits. (Tr. at 460).

Dr. Sareen's report is dated November 9, 2011. (Tr. at 492). The report stated that Plaintiff had normal orientation, mood, affect, memory, personal habits, and the ability to relate to the staff. (Tr. at 492). Dr. Sareen diagnosed Plaintiff with anxiety, depression with agoraphobia, shortness of breath during panic attacks, and fatigue secondary to insomnia. (Tr. at 493). While the ALJ afforded little weight to Dr. Sareen's medical opinion because her diagnoses appeared to be based on solely Plaintiff's subjective complaints and because Dr. Sareen is not a psychiatric/psychology specialist, the ALJ found that the examination performed by Dr. Sareen failed to note any abnormalities. (Tr. at 19).

As stated above, substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote*, 67 F.3d at 1560. When an ALJ's decision is supported by substantial evidence, the district court will affirm. *See Edwards*, 937 F.2d at 584 n.3.

Here, substantial evidence supports the ALJ's decision to discount Dr. Tritel's opinion. Upon review of the two reports, the Court notes that the doctors' opinions specifically disagreed on Plaintiff's mood and affect. (*See* Tr. at 458, 492). Dr. Tritel opined that Plaintiff's mood and affect were "depressed" (Tr. at 458), while Dr. Sareen noted normal mood and affect. (Tr. at 492). Additionally, Dr. Sareen's report appears to show far more normal behaviors than Dr. Tritel's opinion. (*See* Tr. at 458, 492). Thus, Dr. Sareen's report, which supports a contrary finding, constitutes substantial evidence endorsing the ALJ's decision to afford little weight to

14

Dr. Tritel's medical opinion on this basis. *See Phillips*, 357 F.3d at 1241. Thus, the ALJ did not err by affording less weight to Dr. Tritel's medical opinion regarding Plaintiff's mental limitations on this ground.

The final reason given by the ALJ for affording less weight to Dr. Tritel's medical opinion regarding Plaintiff's mental limitations is that the ALJ found Dr. Tritel's opinion to be inconsistent with his own treatment notes. (Tr. at 19). As stated above, Dr. Tritel found that Plaintiff did not have the ability to sustain work activity for eight hours a day, five days a week. (Tr. at 460). The ALJ stated that, as early as 2010, Dr. Tritel had noted that Plaintiff suffered from bipolar disorder, anxiety, and attention deficit disorder. (Tr. at 19). The ALJ's review of the treatment notes showed that, over time, Plaintiff complained of "agoraphobia, anxiety, low energy, a depressed mood, hopelessness, and voices in her head and stated she was not sure the medications helped." (Tr. at 19). The ALJ noted that by May 2012, Plaintiff reported that "Celexa sedated her, but she denied depression and irritability." (Tr. at 19). The ALJ further noted that, by July 2012, Plaintiff has stated that she felt depressed, but that Adderall had helped. (Tr. at 19). Moreover, the ALJ noted that Lamictal appeared to prevent "deep episodes of depression that caused suicidal ideation." (Tr. at 19).

In this instance, while Plaintiff cited numerous examples in Dr. Tritel's treatment notes showing Plaintiff's reported mental health issues (*see* Doc. 18 at 13-16 (citing *e.g.*, Tr. at 406)), the medical evidence above also demonstrates that medicine appeared to help control Plaintiff's mental health issues. (*See e.g.*, Tr. at 564-66; 622). Moreover, the medical evidence shows that, at times, Plaintiff was "doing well" and that her condition was under "fair control" on her prescribed regimen. (*See e.g.*, Tr. at 420, 425). Additionally, as stated above, Dr. Tritel is not a specialist in mental health (s*ee* Tr. at 601), and the record does not show any clear objective

15

documentation of the claimant's alleged mental health conditions. The Court finds that these facts support a conclusion that Dr. Tritel's treatment records are at odds with Dr. Tritel's conclusion that Plaintiff is unable to sustain work activity for eight hours a day, five days a week. Thus, for these reasons, the ALJ was justified in his decision to afford less weight to Dr. Tritel's medical opinion regarding Plaintiff's mental limitations because substantial evidence exists demonstrating that Dr. Tritel's opinion was inconsistent with his own treatment notes. *See Phillips*, 357 F.3d at 1241.

Upon consideration, the Court finds that the ALJ did not err when he discounted Dr. Tritel's medical opinion regarding Plaintiff's mental limitations.

### 4. Analysis Concerning Dr. Kasprzak

Cheryl Kasprzak, Psy.D. is a non-treating, consultive examiner. (Tr. at 461). Dr. Kasprzak evaluated Plaintiff on October 21, 2011, and made several findings regarding Plaintiff's mental status. (Tr. at 461). In her examination, Dr. Kasprzak noted that Plaintiff drove thirty minutes to get to the evaluation. (Tr. at 462). Dr. Kasprzak observed no difficulty sitting, standing, walking, or handling objects. (Tr. at 462). Moreover, Dr. Kasprzak did not note any involuntary movements. (Tr. at 462). Plaintiff presented clean, casually dressed, and unremarkably groomed. (Tr. at 462). Plaintiff was noted to be "pleasant, willing, and cooperative throughout the evaluation." (Tr. at 462).

For the Mental Status Evaluation she performed on Plaintiff, Dr. Kasprzak stated that Plaintiff's mood was depressed and her affect labile. (Tr. at 464). Dr. Kasprzak noted that Plaintiff was oriented and had a cooperative attitude. (Tr. at 464). Thought content was reported to be within normal limits and thought process was reported as tangential. (Tr. at 464). Dr. Kasprzak reported that Plaintiff's speech quality was mildly rambling and Plaintiff's speech

content was tangential. (Tr. at 464). Psychomotor activity was reportedly within normal limits. (Tr. at 464). Dr. Kasprzak estimated Plaintiff's intellectual ability to be in the below average range. (Tr. at 464). Dr. Kasprzak reported that Plaintiff's immediate memory and recent memory were within normal limits. (Tr. at 464). Remote memory, however, was only reported as adequate. (Tr. at 464). Attention and concentration were reported to be within normal limits. (Tr. at 464-65). Dr. Kasprzak opined that judgment and insight "are considered adequate for purposes of this evaluation." (Tr. at 465). Dr. Kasprzak reported that Plaintiff "stated death wishes," but denied current suicidal and homicidal ideation, plan, or intent. (Tr. at 465).

Dr. Kasprzak diagnosed Plaintiff with major depressive disorder, panic disorder with agoraphobia, and bipolar disorder. (Tr. at 465). Additionally, Dr. Kasprzak assigned Plaintiff a global assessment of functioning (GAF) score of 50. (Tr. at 465). Dr. Kasprzak opined that Plaintiff possesses the skills and cognitive capacity to manage her finances independently of others. (Tr. at 465). However, Dr. Kasprzak opined that Plaintiff has a guarded prognosis for gainful employment. (Tr. at 465).

When considering Dr. Kasprzak's functional assessment, the ALJ only afforded "some weight" to her medical opinion. (Tr. at 20). The ALJ found that the functional assessment performed by Dr. Kasprzak was consistent with her own medical opinion. (*See* Tr. at 20). However, the ALJ took issue with Plaintiff's diagnosis of a GAF score of 50. (Tr. at 20). The ALJ stated that a score of 50 denotes "serious symptoms." (Tr. at 20). The ALJ cited the fourth edition of the Diagnostic and Statistical Manual of Mental Disorders, which indicates "that a person with serious symptoms exhibits for instance, suicidal ideation, severe obsessional rituals, frequent shoplifting or any serious impairment in social, occupational, or school functioning, *e.g.*, no friends, unable to keep a job, cannot work." (Tr. at 20). The ALJ concluded that the

17

GAF score assigned by Dr. Kasprzak "is not completely consistent with the claimant's conditions." (Tr. at 20). Specifically, the ALJ noted that Plaintiff's "attention and concentration, as well as her recent, remote and immediate memory were within normal limits." (Tr. at 20). Moreover, the ALJ noted Dr. Kasprzak's findings that Plaintiff "had a cooperative attitude" and that her psychomotor activity and thought content were within normal limits. (Tr. at 20). The ALJ also noted that Plaintiff "failed to undergo actual psychotherapy as previously advised." (Tr. at 20).

Plaintiff argues that the ALJ failed "to follow Agency policy in his evaluation of SSA consultative examining psychologist Dr. Kasprzack's opinion." (Doc. 18 at 19). Plaintiff argues that the ALJ "gave no obvious consideration to Dr. Kasprzak's examining relationship" and "did not discuss Dr. Kasprzak's specialty in psychology." (*Id.*). Moreover, Plaintiff argues that the ALJ did not discuss "the consistency of Dr. Kasprzak's opinion with Dr. Tritel's opinion." (*Id.*).

Defendant argues that substantial evidence supports the ALJ's decision to assign only some weight to the one-time examiner's opinion. (Doc. 21 at 13-14). Specifically, Defendant argues that Dr. Kasprzak's findings do not reflect serious symptoms and that Plaintiff "failed to avail herself of any formal mental-health treatment and reported a wide range of daily activities." (*Id.* at 14). Defendant contends that these facts undermine Dr. Kasprzak's opinion and "provides substantial evidence supporting the ALJ's decision to assign it only some weight." (*Id.*).

As stated above, non-treating physicians and one-time examiners are not entitled to any special deference regarding their medical opinions. *See McSwain*, 814 F.3d at 619. Nevertheless, when evaluating any medical source, the same criteria are used whether the medical source is a treating or non-treating doctor. *See Bennett*, 2009 WL 2868924, at *2. The factors considered are "(1) the length of the treatment relationship and the frequency of

18

examination; (2) the nature and extent of any treatment relationship; (3) supportability; (4) consistency with other medical evidence in the record; and (5) specialization." *Id*. (citations omitted). An ALJ may reject medical opinions if the evidence supports a contrary finding. *See Lacina*, 606 F. App'x at 526. Additionally, if an ALJ "articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error." *Poellnitz*, 349 F. App'x at 502.

Upon consideration of the record, the Court finds that substantial evidence supports the ALJ's decision to afford Dr. Kasprzak's medical opinion only "some weight." Specifically, the evidence of record shows that Plaintiff's attention and concentration, as well as her recent and immediate memory were within normal limits. (Tr. at 464-65). Additionally, Plaintiff's psychomotor activity and thought content were within normal limits. (Tr. at 464-65). Moreover, Plaintiff's lack of formal mental health treatment in addition to the many activities that she performs at her house provided additional evidence for supporting the ALJ's conclusions. Therefore, the Court agrees with the ALJ and Defendant that the specific, clearly articulated reasons for not according the opinion non-treating physician controlling weight (*i.e.*, that Dr. Kasprzak's findings do not reflect the serious symptoms that a GAF score of 50 denotes) are supported by substantial evidence. *Poellnitz*, 349 F. App'x at 502. Thus, the ALJ did not err by affording Dr. Kasprzak's medical opinion regarding Plaintiff's mental limitations less weight.[5]

---

[5] The Court notes that because the ALJ assigned "some weight" to Dr. Kasprzak's medical opinion, the ALJ did not completely discount Dr. Kasprzak's medical opinion. The ALJ accounted for Dr. Kasprzak's opinion in his analysis of the non-exertional section of Plaintiff's RFC determination. (Tr. at 20).

For the foregoing reasons, the Court finds that the ALJ applied the correct legal standards, and that substantial evidence exists to support the weight the ALJ assigned to the medical opinions of Dr. Tritel and Dr. Kasprzak regarding Plaintiff's mental limitations.

## III.  Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 16, 2016.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties